IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ROCK HILL DIVISION

| | | |
|---|---|---|
| PATRICIA T. PATTERSON | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 0:04-23250-MBS-BM |
| v. | ) | |
| | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| AUTOZONE AUTO PARTS, | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This action has been filed by the Plaintiff, pro se, alleging retaliation by her employer, the Defendant Autozone Autoparts, Inc., in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. Seq.. The Defendant filed a motion for summary judgment and for sanctions on February 7, 2006.

As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on February 8, 2006, advising Plaintiff of the importance of a motion for summary judgment and of the need for her to file an adequate response. Plaintiff was specifically advised that if she failed to respond adequately, the Defendant's motion may be granted, thereby ending her case. Plaintiff thereafter filed a memorandum in opposition to the motion for summary judgment on March 14, 2006, following which Defendant filed a reply memorandum on March 20, 2006. Defendant's

1



motion is now before the Court for disposition.[1]

## Background and Evidence

Plaintiff is an employee of the Defendant, which operates retail auto part stores throughout the United States. Plaintiff is employed at the Defendant's store in Lancaster, South Carolina, having initially been hired on or about February 24, 2000. Plaintiff was subsequently promoted to the position of parts sales manager on or about April 21, 2000, at which time she received a pay raise. Plaintiff's Deposition, pp. 30-31. Plaintiff continues to be employed with the Defendant in this position. Plaintiff's Deposition, pp. 30, 54.

On April 30, 2001, Plaintiff filed an administrative charge of discrimination with the South Carolina Human Affairs Commission (SCHAC) and the Equal Employment Opportunity Commission (EEOC), alleging gender and race discrimination. Defendant's Exhibit C.[2] Plaintiff subsequently filed a lawsuit in this Court on July 26, 2002. Patterson v. Autozone, C/A No. 0:02-2510 (Defendant's Exhibit D, hereinafter "Patterson I"). Patterson I was dismissed on April 30, 2003 on the grounds that Plaintiff had failed to timely pursue her claims. See Defendant's Exhibit E.

Plaintiff thereafter filed a second charge with SCHAC and the EEOC on November 24, 2003, this time alleging that she had been retaliated against by the Defendant through September 18, 2003 on account of her previous administrative charge and lawsuit. Plaintiff specifically alleged that she had been accused of processing fraudulent returns, had her pre-approved vacation cancelled

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(e) and (g), D.S.C. The Defendant has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[2]Plaintiff is an African-American female.



on more than one occasion, that she had been threatened with the loss of her job, and denied a pay increase. Plaintiff alleged that she had been subjected to this treatment by her supervisor, Tim Burris, and by the Defendant's Regional Manager, Mike Campbell. Defendant's Exhibit A-8. Plaintiff then filed this lawsuit on December 13, 2004, setting forth numerous instances where she alleges she received improper treatment from either Burris or Campbell.

The evidence reflects that Plaintiff was issued two corrective actions for insubordination and conduct unbecoming an employee on August 10, 2002, as well as a first written warning corrective action review for job performance on May 28, 2003. Defendant's Exhibit A-3. Plaintiff also received two different corrective actions for job performance and attitude on September 2, 2003. Id. On or about August 23, 2003, Plaintiff wrote Campbell complaining about Burris and his conduct towards her, including that she had been subjected to a racial slur. Defendant's Exhibit A-5. As a result of this letter, a formal investigation was initiated by Campbell, and statements were taken from both the Plaintiff and Burris. See Defendant's Exhibits A & F. Campbell determined that Burris had not violated any of the Defendant's diversity policies, and no disciplinary action was taken. Defendant's Exhibit F.

Plaintiff thereafter wrote another letter to Campbell on September 3, 2003. Defendant's Exhibit A-7. This resulted in Campbell and District Manager Scott Blackburn meeting with both the Plaintiff and Burris on September 23, 2004. Defendant's Exhibit A-7 & F. However, again no disciplinary action was taken against either Plaintiff or Burris.

As previously noted, Plaintiff continues to work for the Defendant.

## Discussion

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers

3



to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

## I.

### (Previously Litigated Claims)

Defendant first asserts in its motion that, to the extent Plaintiff may be attempting to relitigate some of the claims she previously raised in Patterson I, she is barred from doing so under the doctrines of collateral estoppel and res judicata. In her memorandum in opposition to summary judgment, Plaintiff discusses this issue (see Plaintiff's Memorandum, at pp. 8-11), but does not appear to contest Defendant's argument that she is precluded from relitigating claims she asserted in Patterson I.

In any event, the undersigned agrees that since Patterson I was dismissed with prejudice, Plaintiff is prohibited from relitigating the claims asserted in that lawsuit in her present litigation, because under the doctrine of res judicata a judgment on the merits in a prior suit bars a



second suit involving the same parties or their privies based on the same cause of action. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326, n. 5 (1979).  Patterson I involved the same parties and involved a final determination on the merits. Shoup v. Bell & Howell Co., 872 F.2d 1178, 1179-1181 (4th Cir. 1989) [summary judgment on statute of limitations grounds constitutes judgment on merits precluding relitigation of same claims]; Samuels v. Northern Telecom, Inc., 942 F.2d 834, 836-837 (2d Cir. 1991); Briggs v. Newberry County Sch. District, 838 F.Supp. 232, 233-234 (D.S.C. 1992) ["When entertaining a motion to dismiss on the ground of res judicata or collateral estoppel, a court may judicially notice facts from a prior judicial proceeding."], aff'd, 989 F.2d 491 (4th Cir. 1993).

Therefore, Plaintiff may only litigate the retaliation claim referenced in her November 24, 2003 administrative filing in this lawsuit. See Defendant's Exhibit A-8.

## II.

**(Litigation of Claims Not Asserted in Plaintiff's Administrative Charge)**

Defendant also argues in its motion for summary judgment that Plaintiff has included claims in her Complaint that were not alleged by her in her administrative filing, and that with respect to any claims being asserted that were not part of her administrative filing of November 24, 2003, those claims or allegations should be dismissed for failure to exhaust administrative remedies.

In order to bring a lawsuit in the United States District Court under Title VII, a plaintiff is first required to properly exhaust his or her administrative remedies by filing a charge of discrimination with either the EEOC or, in a "deferral" state, the appropriate state agency.³  As a

---

³It is undisputed that South Carolina is a deferral state, and that SCHAC is the appropriate state agency for purposes of initiating state proceedings. E.E.O.C. v. Hansa Products, Inc., 844 F.2d 191, 192 n. 1 (4th Cir. 1988) (quoting 42 U.S.C. § 2000e-5(e)) ["A deferral state is one 'which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice.'"]; see S.C.Code Ann.

5



general rule, only the claims set forth in an administrative charge are exhausted for purposes of a subsequent lawsuit; Smith v. First Union Nat'l Bank, 202 F.3d 234, 247-248 (4th Cir. 2000) [A plaintiff's EEOC charge defines the scope of his subsequent right to institute a civil suit]; Lattimore v. Polaroid Corp., 99 F.3d 456, 464-465 (1st Cir. 1996); although claims that were not included in an administrative charge but were nonetheless investigated by the administrative agency as part of its investigation of the claimant's allegations may also be considered exhausted for purposes of a subsequent lawsuit. Smith v. First Union Nat'l Bank, 202 F.3d 234, 248 (4th Cir. 2000); Tran v. Standard Motor Products, Inc., 10 F.Supp.2d 1199, 1208 (D.Kan. 1998) [even where claimant fails to assert a claim in their administrative charge, if that claim was nevertheless considered by the administrative agency as part of the administrative investigation of the claimant's administrative filing, then the claim is properly exhausted]; Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996) ["only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit"]; but see LaPorta v. City of Chicago, No. 95-2899, 1999 WL 965970 at * 3 (N.D.Ill. 1999).

      Defendant correctly notes that Plaintiff's administrative charge only charges that she was being retaliated against by being accused of processing fraudulent returns, by having her pre-approved vacation cancelled on more than one occasion, by being threatened with the loss of her job, and by being denied a pay increase, all occurring on or before September 18, 2003. See Defendant's Exhibit A-8. However, in her Complaint, Plaintiff appears to additionally ascribe a racial animus to Burris' actions, as opposed to a retaliatory animus, and also talks about the Defendant denying or

---

§ 1-13-90, et. seq., as amended.



interfering with a workers' compensation claim, while in her memorandum opposing summary judgment, Plaintiff also makes reference to claims for gender discrimination, for violation of the Americans with Disabilities Act (ADA), and for hostile work environment.  Defendant argues that Plaintiff's claims regarding race discrimination as well as the additional claims she discusses in her complaint and memorandum should be dismissed since they are not reasonably related to her administrative  charge of retaliation for filing a prior administrative charge.

After careful review and consideration of the administrative charge, the Complaint, the arguments and evidence of both parties and the applicable caselaw, the undersigned cannot find any evidence to show exhaustion of any claims by the Plaintiff other than her retaliation claim, and she should therefore be barred from pursuing any such claims in this lawsuit. Her administrative charge clearly only makes a charge of retaliation, and no evidence has been presented to the Court to show that a separate race discrimination claim was investigated as part of her Complaint, or that any charge relating to a workers' compensation claim was considered.[4]  To the extent Plaintiff references other types of claims in her memorandum, those claims are also barred from consideration by this Court. *Cf.* Steffen v. Meridian Life Ins. Co., 859 F.2d 534, 545 (7th Cir. 1988) [discussing different theories of liability between retaliation and race discrimination claims]; Sloop v. Memorial

---

[4] A review of Plaintiff's voluminous filings with this Court; see note 6, infra; reflects that she may have written letters to SCHAC and/or the EEOC in which she complained about racial discrimination and other issues.  However, she has provided no evidence to show that SCHAC or the EEOC reasonably should have included these other issues in their investigation or broadened the scope of any investigation of Plaintiff's administrative charge to include these other matters. Further, Plaintiff's own exhibits show that her workers' compensation claim was paid. See UnumProvident letter of March 6, 2006.

If Plaintiff provides evidence to the Court to show that the Defendant was provided notice of these claims and that a racial discrimination or other such claim was investigated as part of her charge, a supplemental order could be issued requiring Defendant to brief that claim.

7



Mission Hosp., Inc., 198 F.3d 147, 149 (4th Cir. 1999) [holding that Plaintiff could not bring a Title VII retaliation claim when the administrative charge only alleged an age discrimination claim]; Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996) [ "permitting a late amendment to an original discrimination charge adding an entirely new theory of recovery 'would eviscerate the administrative charge filing requirement altogether' by depriving the employer of adequate notice and resulting in a failure to investigate by the responsible agency."] (quoting Conroy v. Boston Edison Co., 758 F.Supp. 54, 59-60 (D.Mass. 1991); Bigleggins v. General Elec. Co., No. 93-2270, 1996 WL 18574682 F.3d 425 (10th Cir. April 18, 1996) [dismissing claim of racial discrimination where plaintiff only alleged retaliation in his EEOC charge].

However, the undersigned does not find that Plaintiff's allegations concerning Burris' alleged conduct and/or statements set forth in her Complaint should be stricken. Rather, the Court should consider these allegations, but do so only in the context of Plaintiff's claim that Burris was retaliating against her for having filed her previous discrimination claim.

## III.

## (Retaliation Claim)

In her Complaint, Plaintiff claims that she was retaliated against for having previously filed a charge of discrimination against the Defendant. Section 704(a) of Title VII, 42 U.S.C. § 2000(e)-3(a)[setting forth the standard for a retaliation claim], provides as follows:

> It shall be an unlawful practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicants for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he

8



has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

Retaliation cases under Title VII are subject to the same requirements of proof as are applicable to disparate treatment claims. Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1985) overruled on other grounds, Price Waterhouse v. Hopkins, 490 U.S. 228 (1989); see also Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989). "The employee is initially required to establish a prima facie case of retaliation by a preponderance of the evidence. Such a prima facie case consists of three elements: (1) the employee engaged in protected activity; (2) the employer took adverse employment action against the employee; and (3) a causal connection existed between the protected activity and the adverse action." Id.; Munday v. Waste Management of North America, Inc., 126 F.3d 239, 242 (4th Cir. 1997). Once a prima facie case has been presented, the Defendant employer has the burden of producing a legitimate, non-discriminatory reason for its actions. If the employer can produce a legitimate, non-discriminatory reason for its actions, the employee must then demonstrate that the Defendant's proffered reason is pretextural. Id.

Here, it is uncontested that Plaintiff engaged in protected activity when she filed her previous administrative claim of discrimination and subsequent lawsuit. Laughlin v. Metropolitan Washington Airports Authority, 952 F.Supp. 1129, 1133 (E.D.Va. 1997), aff'd, 149 F.3d 253 (4th Cir. 1998). However, the Defendant contests that it ever took an adverse employment action against the Plaintiff (as that term is defined in the applicable caselaw), or that any causal connection has been shown between Plaintiff's protected activity and any adverse action. After careful consideration of the arguments and evidence presented, the undersigned is constrained to agree that Plaintiff has failed to establish these elements of her prima facie case.

An "adverse employment action" is any action that constitutes a significant change

9



in employment status, but does not include decisions having no affect upon ultimate employment conditions. See generally, Page v. Bolger, 645 F.2d 227, 233 (4th Cir. 1981) cert. denied, 454 U.S. 892 (1981); Burlington Industries, Inc. v. Ellerth, 118 S.Ct. 2257, 2268 (1998) ["A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."]; McDougal-Wilson v. Goodyear Tire and Rubber Co., __ F.Supp.2d __, 2006 WL 988310 (E.D.N.C. Mar. 31, 2006) ["Significant detrimental effect on an employee includes reduced pay, a diminished opportunity for promotion, less responsibility or a lower rank."]; *cf.* Crady v. Liberty Nat. Bank & Trust Co. Of Ind., 993 F.2d 132, 136 (7th Cir. 1993) ['A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation']; Hopkins v. Baltimore Gas & Electric Co., 871 F.Supp. 822, 836 (D.Md. 1994), aff'd 78 F.3d 745 (4th Cir. 1996), cert. denied, 117 S.Ct. 70 (1996) [the term 'adverse employment action' refers in this context to 'ultimate employment decisions', not 'interlocutory or mediate decisions having no effect upon employment conditions'].

Here, Plaintiff's claims include that Burris insisted that she change her pre-scheduled vacation, that she was written up for poor job performance and was given extra duties to perform, was assigned unfavorable work shifts, that she was not given pay increases she should have received, and was in general treated poorly by both Burris and Campbell. See Complaint. The evidence submitted to the Court with respect to these claims shows that, although Burris did attempt to have Plaintiff reschedule her vacation, she ultimately took the vacation at issue after refusing to reschedule

10



it. Plaintiff's Deposition, pp. 109-111. With respect to her "write ups", the evidence shows that Plaintiff received two corrective action reviews in August 2002 for being insubordinate to a store manager and for issuing a corrective action herself on another employee without the approval of the store manager. Plaintiff's Deposition, p. 63; see also Plaintiff's Deposition, Defendant's Exhibit A-3. Plaintiff admitted, however, that she had gotten into a heated argument with the store manager, and in any event there is no evidence of any further action having been taken against the Plaintiff because of these two incidents.[5] Plaintiff was issued a first written warning corrective action by Burris on May 23, 2003, because he did not believe Plaintiff was following the Defendant's policy of greeting customers upon entering the store. Plaintiff's Deposition, Defendant's Exhibit A-3. On September 2, 2003, Plaintiff received two additional corrective actions for job performance and attitude. One was for Plaintiff directing disparaging language at a co-employee, with the second being issued due to Plaintiff's failure to complete a Quantity-on-Hand Report and a Ragsrat Report. With respect to these two incidents, Plaintiff conceded at her deposition that her tone had been "sarcastic" with respect to the first corrective action, and that she had indeed forgotten to complete the Quantity-on-Hand Report referenced in the second corrective action. Plaintiff's Deposition, pp. 74, 77-79.

In her August 2003 performance appraisal, Burris rated Plaintiff as having failed to meet expectations. Plaintiff's Deposition, Defendant's Exhibit A-4. In this performance appraisal, Burris stated that Plaintiff was always "finger pointing" and arguing with other employees, and at her deposition, Plaintiff acknowledged that she had a sometimes rocky relationship with other employees at the store. See Plaintiff's Deposition, pp. 81, 85.

---

[5]Further, these two corrective actions were issued prior to Burris becoming the manager at Plaintiff's store. Plaintiff's Deposition, Defendant's Exhibit A-3.

11



With respect to Plaintiff's letter to Campbell of August 23, 2003, wherein Plaintiff sets forth various complaints about Burris, Defendant notes that no charge of retaliation was made against Burris in that letter. The evidence also shows that following a formal investigation of Plaintiff's complaints, which included Plaintiff's claim that Burris had improperly accused her of having been rude to a customer, no wrongdoing was found as a result of the investigation and no disciplinary action was taken against any employee. See Plaintiff's Deposition, Defendant's Exhibit F. Following Plaintiff's second letter to Campbell on September 3, 2003, wherein she continued to complain about the way Burris treated not only her, but all of the employees at the store, Plaintiff had a meeting with Campbell, District Manager Scott Blackburn, and Burris on September 23, 2004, during which Campbell told Plaintiff that she was a long term and valued employee, although he expected her to be a good team player. Again, no disciplinary action was taken against any employee, including the Plaintiff, as a result of Plaintiff's letter or this meeting. See Defendant's Exhibit A-7, & F.

Finally, with respect to Plaintiff's claim that she failed to receive pay increases while others were given raises, the record reflects that Plaintiff received a pay raise on or about October 22, 2002, and another pay raise on October 23, 2005. See Defendant's Exhibits F & G; see also Plaintiff's Memorandum in Oppositioin, pp. 21, 49. Plaintiff has provided no evidence with respect to raises given to other employees that she was allegedly denied; rather, she only generally complains that she should have gotten additional raises (other than the ones she received), without specifying when these raises should have been received, or how much they should have been. Plaintiff also testified at her deposition as follows:

**Question:**     Then he [Burris] never docked your pay?

12



| | |
|---|---|
| **Answer:** | Yes. |
| **Question:** | How? |
| **Answer:** | Well not docked my pay. I wasn't give a pay raise along with all the other employees, so you might as well say he docked my pay. |
| **Question:** | Well, you're not entitled to raise, are you? |
| **Answer:** | Yes. |
| **Question:** | Is that your belief or is - - I mean, you're not entitled to a raise. I mean, your salary was never reduced, was it? |
| **Answer:** | It was never reduced. |
| **Question:** | Okay. I mean, raises aren't automatic. |
| **Answer:** | If everyone else is given a raise it's automatic. |
| **Question:** | Is it your knowledge that everyone else was given a raise in the entire corporation of Autozone? |
| **Answer:** | With certain discussions around the store that - - well, Tim [Burris] told me during his last appraisal that he wasn't even given a raise, so... |
| **Question:** | Okay, so Tim wasn't give a raise. |
| **Answer:** | He said he wasn't. |

Plaintiff's Deposition, pp. 101-102.

This testimony does not constitute evidence that Plaintiff was denied a pay raise due to unlawful retaliation. Plaintiff also testified that she has never been demoted by Burris or anyone else, and that she is still the parts manager at her store, where they are presently a "happy, good team....We all laugh and joke." Plaintiff's Deposition, p. 40.

Plaintiff further testified that she and Tim Burris essentially just do not like each other, with Plaintiff testifying that: "I'm going to be honest. My biggest problem with Autozone - - with



the problems that I - - with most of the issues that I had is with Autozone was mainly because I am a very outspoken person....[a]nd they do not like that, and anybody would tell you, if you don't want to know, don't ask me. I'm serious, that's the way I am. I mean, me and mama had conflicts with that....because I'm a very outspoken person." Plaintiff's Deposition, pp. 84-85.

This evidence does not show that Plaintiff was subjected to an "adverse employment action" as that term is defined in the applicable caselaw. Notwithstanding her frequent disputes with Burris as reflected in the record and evidence, Plaintiff has never been demoted, never received a reduction in pay, and she continues in her job as the parts manager at her store with what she describes as a good, happy team of co-workers. The fact that she may have occasionally had disagreements with Burris, even those which resulted in write-ups, does not mean that she suffered an adverse employment action for purposes of a Title VII retaliation claim. See Ellerth, 118 S.Ct. at 2268; Crady, 993 F.2d at 136; Flaherty v. Gas Research Institute, 31 F.3d 451, 456 (7th Cir. 1994) [a 'bruised ego' is not enough]; Geisler v. Folsom, 735 F.2d 991, 994-996 (6th Cir. 1984) [no "adverse employment action" where evidence failed to establish any more than bad relations between plaintiff and her supervisor]; James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 376-377 (4th Cir. 2004) ["[A]n employee's dissatisfaction with this or that aspect of work does not mean an employer had committed an actionable adverse action."]; Summerlin v. M&H Valve Co., 167 Fed.Appx. 93, 97 (11th Cir. Jan. 17, 2006) ["the reprimand of an employee does not constitute an adverse employment action when the employee suffers no tangible harm as a result"]; Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1260-1261 (11th Cir. 2001) ["Negative performance evaluations, standing alone, do not constitute adverse employment action sufficient to satisfy the second element of a prima facie case of retaliation"]; Cossette v. Minn.Power & Light, 188 F.3d 964, 972 (8th Cir.

14



1999) ["[T]he negative evaluation does not by itself constitute adverse employment action...."]; *cf.* Kocsis v. Multi-Care Management, Inc., 97 F.3d 876, 887 (6th Cir. 1996) [demotion without change in pay, benefits, duties, or prestige insufficient]; Harlston v. McDonnell Douglas Corp., 37 F.3d 379, 382 (8th Cir. 1994) [reassignment to a more inconvenient job insufficient]"; Williams v. Bristol-Myers Squibb, 83 F.3d 270, 274 (7th Cir. 1996) [A transfer or reassignment that does not involve a demotion in form or substance does not rise to the level of an adverse employment action].

   While a change in Plaintiff's pay status, including a failure to receive a pay raise (or receiving poor performance evaluations, if that led to Plaintiff not receiving a raise), could be considered an adverse employment action, Plaintiff has simply provided no evidence to support her claim that she failed to receive pay raises due to a retaliatory animus by Burris or Campbell. Rather, she has offered only her own general and conclusory opinion that she should have received other pay raises in addition to the pay raises she did receive, with no supporting evidence. See Contemporary Mission v. United States Postal Serv., 648 F.2d 97, 107, n.14 (2d Cir. 1981) [An "opposing party's facts must be material and of a substantial nature, not fanciful,...conjectural, speculative, nor merely suspicions"] (internal citations and quotation marks omitted); Kulak v. City of New York, 88 F.3d 63, 71 (2nd Cir. 1996) ["conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment"]; Nicolo v. Philip Morris, Inc., 201 F.3d 29, 33 (1st Cir. 2000) [Conjectural allegations and conclusory assertions do not suffice to establish a genuine issue of fact].

   Plaintiff has also presented no evidence to establish causation, as she concedes in her deposition that neither Burris nor Campbell ever referenced her previous lawsuit or claims of

15



discrimination, and indeed offers only speculation that they even knew about that action.[6] Plaintiff's Deposition, pp. 23, 71; Cecilino v. Allstate Ins. Co., 908 F.Supp. 519, 532 (N.D. Ill. 1995) [a simple showing that an adverse action occurred after a complaint of discrimination "is not enough to make out a prima facie case of retaliation, let alone survive a motion for summary judgment"]; Contemporary Mission, 648 F.2d at 107: Kulak, 88 F.3d at 71; Nicolo, 201 F.3d at 33; see Papasan v. Allain, 478 U.S. 265, 286 (1986)[Courts need not assume the truth of legal conclusions couched as factual allegations.]; Bender v. Suburban Hospital, Inc., 159 F.3d 186 (4th Cir. 1998); Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987)["Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"].

In any event, the evidence before the Court establishes legitimate, non-discriminatory

---

[6] In opposition to the Defendant's motion for summary judgment, Plaintiff has submitted a seventy-one (71) page memorandum together with one hundred and five (105) pages of exhibits. Although Plaintiff's memorandum grossly exceeds the page limitation set forth in this Court's Local Rules, the undersigned has nevertheless reviewed her brief in light of her pro se status. Plaintiff's brief, which is generally written in a rambling and disjointed style, in large part discusses many of the claims Plaintiff presented in Patterson I, which are not at issue in this lawsuit, while also presenting her current claims in a general and conclusory fashion with few citations to relevant evidence. See Estrella v. Bryant, 682 F.2d 814, 819 (9th Cir. 1982) [legal memoranda are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment]; see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) [there must be evidence on which a jury could reasonably find for the Plaintiff]; Gans v. Gray, 612 F.Supp. 608, 619 (E.D.Pa. 1985) [mere statements made in briefs are not evidence for the purpose of supporting or opposing a motion for summary judgment]; cf Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1358 (4th Cir. 1995) [statements in brief are not evidence]. Plaintiff's citations to her exhibits are also at best sporadic, and Rule 56 does not impose upon the District Court a duty to sift through the record in search of evidence to support a litigant's arguments on summary judgment. Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994), cert. denied, 115 S.Ct. 195 (1994); Malina v. Baltimore Gas & Elec., 18 F.Supp.2d 596, 604 (D.Md. 1998); Hayes v. North State Law Enforcement Officers Ass'n, 10 F.3d 207, 215 (4th Cir. 1993), cert. denied sub nom, Price v. City of Charlotte, 420 U.S. 1116 (1997). The undersigned did, however, conduct a general review of these exhibits in light of Plaintiff's pro se status in an attempt to cull out any potentially relevant evidence.

16



reasons on the part of the Defendant for the employment decisions at issue, and Plaintiff has failed to set forth evidence of pretext sufficient to survive summary judgment on her retaliation claim. In order to show pretext, Plaintiff must show that "but for" her employer's intent to retaliate against her for having engaged in protected conduct, she would not have suffered the alleged adverse employment action(s). EEOC v. Clay Printing Co., 955 F.2d 936, 941 (4th Cir. 1992); Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231, 234 (4th Cir. 1991). "Direct or indirect evidence of [retaliatory] motive may do, but 'the evidence as a whole . . . must be sufficient for a reasonable fact-finder to infer that the employer's decision was motivated by [retaliatory animus].'" LeBlanc v. Great American Insurance Co., 6 F.3d 836, 843 (1st Cir. 1993)(citing Goldman v. First Nat'l Bank, 985 F.2d 1113, 1117 (1st Cir. 1993)(quoting Connell v. Bank of Boston, 924 F.2d 1169, 1172, n. 3 (1st Cir. 1991), cert. denied, 111 S.Ct. 2828 (1991)); Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 140-149 (2000). The evidence before the Court reflects that Plaintiff often engaged in disputes with co-workers, that she is opinionated and has no reservations about speaking her mind, and that she and Burris simply did not get along. She has offered no evidence to support her claim that she failed to receive raises she should have received, and also conceded that she engaged in conduct giving rise to the corrective actions at issue, although she obviously disagrees with whether she should have received a corrective action. See Ross, 759 F.2d at 366 ["Title VII serves the laudable goal of protecting employee access to agencies and courts. It does not shield employees from normal sanctions for misconduct."]; Bodoy v. North Arundel Hosp., 945 F.Supp. 890, 898 (D.Md. 1996).

In sum, Plaintiff only speculates that Burris or Campbell's actions or conduct towards her may have been based on a retaliatory motive. Under the applicable caselaw, the mere fact that



Plaintiff engaged in a protected activity, and later suffered an adverse employment action, is not in and of itself sufficient to establish that the second action was in retaliation for the first. Cecilino, 908 F.Supp. at 532. Plaintiff has an obligation to present evidence to save her allegations from the status of speculation, and must respond to the Defendant's evidence with specific facts showing a genuine issue for trial to survive summary judgment. Rule 56, Fed.R.Civ.P.; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Gairola v. Virginia Dep't of General Services, 753 F.2d 1281, 1288, n. 4 (4th Cir. 1985). She has failed to do so. Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) [A party opposing summary judgment "cannot create a general issue of fact through mere speculation or by the building of one inference upon another."]; *cf.* Geisler, 735 F.2d at 994-996 [no adverse employment action where evidence failed to establish any more than bad relations between plaintiff and supervisor].

Therefore, Plaintiff's retaliation claim should be dismissed.

## Conclusion

Based on the foregoing, it is recommended that the Defendant's motion for summary judgment be **granted**, and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

June 8, 2006

18



### Notice of Right to File Objections to Magistrate Judge's Report and Recommendation
### &
### The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of its filing. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be delivered to a United States District Judge fourteen (14) days after this Report and Recommendation is filed. Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the ten-day period, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-47 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991). See also Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-19 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

See also Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd. Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections. See Wright, supra,; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing addressed as follows:

Larry W. Propes, Clerk<br>
United States District Court<br>
901 Richland Street<br>
Columbia, South Carolina 29201
